THE STATE OF MISSOURI, Respondent, *v.* JOSEPH DICKSON *et al.*, Appellants.

### April 4, 1877.

1. When, after proper proceedings, under article 5 of Wagner's Statutes, page 326, to condemn private property for railroad purposes, the assessed value of the land condemned has been paid to the clerk of the court, the agents and servants of the corporation may enter upon the land and construct the road without being guilty of a violation of section 26, page 495, of Wagner's Statutes.

2. In an action against the agents and servants of such corporation, under section 26, page 495, of Wagner's Statutes, it is error for the court to exclude the record of the proceedings to condemn, offered in evidence by defendants.

APPEAL from the St. Louis Court of Criminal Correction. *Reversed and judgment.*

*Blodgett & Dickson,* for appellants, cited : Wag.Stat. 321, 326, sec. 1 ; Sess. Acts 1873, p. 54 ; Clark's Admr. *v.* Hannibal & St. Joseph R. R. Co., 36 Mo. 202 ; Bloodgood *v.* Mohawk & Hudson R. R. Co., 14 Wend. 51–56 ; Beekman *v.* Saratoga & Schenectady R. R. Co., 3 Paige, 45 ; Const. Mo., art. 2, sec. 21, art. 12, sec. 4.

*M. W. Hogan* and *Jno. McGaffey,* for respondent.

LEWIS, P. J., delivered the opinion of the court.

The St. Louis, Kansas City & Northern Railway Company proceeded, under the provisions of article 5 of the General Statutes, concerning corporations (Wag. Stat. 326), to condemn part of the lot of one Patrick Carroll, in the city of St. Louis, for the laying of its track thereon. Commissioners were appointed, who made their report in due form, awarding to Carroll the sum of $558 for his damages. The company thereupon paid this amount to the clerk of the Circuit Court, and Carroll filed his exceptions to the commissioners' report. The defendants, one of whom was an attorney of the corporation and the other an employee in a different capacity, went with a corps of laborers to the

ground under condemnation, for the purpose of commencing the intended work, when Carroll appeared with a gun and ordered them off, threatening the life of the first man who should disturb his property. Under the direction of defendants some of the laborers commenced removing the fence, when Carroll discharged his gun, the charge entering the ground between him and the workmen. The work was carried on, nevertheless, and the railway was, in due course, laid over the ground. Carroll then caused the defendants, with others, to be arrested, upon an information filed by him in the Court of Criminal Correction, for alleged violation of section 26, on page 495, Wagner's Statutes. This provides that " every person who shall take or keep possession of any real property, by actual force or violence, without the authority of law, * * * shall, on conviction, be adjudged guilty of a misdemeanor, and be punished," etc.

Upon trial of the cause before the court, without a jury, the acts of the parties on Carroll's premises were proved substantially as above stated. The defendants offered in evidence the record of the condemnation proceedings, but this, upon objection made by the State, was excluded. The court dismissed the information as to all the other defendants, and assessed a fine of $25 against defendant Dickson, and a fine of $10 against defendant Burlingame.

We have no clue to the theory upon which the court rejected the testimony offered by defendants and found them guilty of a criminal offense. No brief is filed in behalf of the State, nor does the record give us any information of the grounds which were found sufficient to sustain the court's conclusions. The record of the proceedings in condemnation appears to be without a flaw. The amount of money assessed for damages was duly paid to the clerk, and the statutory justification of the defendants' action thereupon is so plainly expressed that interpretation would be a waste of words.

Did the defendants directly or indirectly take or keep

possession of any real property, etc., without authority of law? The statute which governed the condemnation provides that the commissioners appointed "to assess the damages which the owners of the land may severally sustain by reason of such appropriation * * * shall forthwith return, under oath, such assessment of damages to the clerk of such court, setting forth the amount of damages; * * * and, thereupon, such company shall pay to the said clerk the amount thus assessed, for the party in whose favor such damages have been assessed; and on making such payment it shall be lawful for such company to hold the interest in said land so appropriated for the uses aforesaid." After providing for written exceptions to the commissioners' report, to be filed by either party, the statute declares that, " notwithstanding such exceptions, such company may proceed to * * * construct said road or railroad, and any subsequent proceedings shall only affect the amount of compensation to be allowed." Wag. Stat. 327, secs. 3, 4.

If these words mean anything, the performance by defendants of a plain duty to their employers and to the public was declared by a court of justice to have been criminal and punishable; but for no apparent reason, unless that the duty was performed in the face of a ruffianly and law-breaking attempt at intimidation.

The rights of private property are as sacred as any that the law protects in the citizen. But the right of eminent domain, constitutionally exercised, is above them all. Private property and its enjoyment exist by the law's sanction only. To this sanction pertains an inseparable condition, in the rightful power of appropriation for the public good. The real criminal is he who, in assuming the sanction, will yet trample on the condition.

The land of Carroll had been completely appropriated to the public use, in the manner prescribed by law. The servants and employees of the corporation were delegated by the sovereign authority to make that use available for the

public benefit. No other instruments have ever, in this or in any other State where similar methods prevail, been held requisite for consummating the purposes of such an appropriation. In *Clark* v. *Hannibal & St. Joseph Railroad Company*, 36 Mo. 202, the Supreme Court, referring to the legal effects of a condemnation, said: "There was no question but that the corporation had thus acquired the right of way under their charter and the laws of the State, nor that they had power to construct their road through this land, and to do all things that might be necessary and proper for that purpose. And it is clear that, to the extent of the powers and rights acquired by the corporation under the laws, and within their proper scope, neither the corporation, nor the contractors, nor the workmen under them can be regarded as trespassers or wrong-doers. They had the lawful power and the right to construct the railroad through the plaintiff's farm, and to pull down the plaintiff's fences for the purpose," etc. Said the chancellor, in *Beekman* v. *Saratoga & Schenectady Railroad Company*, 3 Paige, 45 : "From the moment that compensation was paid or deposited as the law had directed, the right to this property was absolutely vested in the defendants, for the use of the railroad, and they have a perfect right to enter upon it and appropriate it to that use."

No execution is provided for by law in such cases. Was it ever supposed that, in order to make a condemnation effectual, an action of ejectment must next be maintained by the corporation, so that a writ of possession may be placed in the hands of the sheriff ? The law gave to these defendants, representing their company, an absolute right of entry. It seems monstrous to assume that by exercising this right — which was also a duty — in the only manner possible for its exercise, they could incur the vengeance of the same law which had created it for them.

The judgment of the court below must be reversed. The testimony rejected, but preserved by the record, presents

an unquestionable defense against the charge in the information. Judgment will, therefore, be rendered by this court for the defendants. All the judges concur.